# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

MARCIA FISCHER,

          Plaintiff,

    v.

HOME DEPOT U.S.A., INC.,

          Defendant.

HOME DEPOT U.S.A., INC.,

        Third-Party Plaintiff,

v.

JOHN DOE,

    Unknown Third-Party Defendant.

Case No. 3:18-cv-00226-SLG

## ORDER RE PENDING MOTIONS

Before the Court are two motions: at Docket 17, Defendant Home Depot U.S.A. Inc.'s ("Home Depot") Motion for Summary Judgment and Alternative Motion for Ruling that the Jury Be Allowed to Apportion Fault to the Unidentified Shoplifter; and, at Docket 22, Home Depot's Alternative Motion for Ruling of Law that Plaintiff May Not Recover the Difference Between the Providers' Rack Rates [and] the Rates Accepted by Plaintiff's Providers for Medical Services Rendered. Plaintiff Marcia Fischer responded in opposition to the first motion at Docket 21. Home Depot replied at Docket 25. Ms. Fischer responded in opposition to the

second motion at Docket 26. Home Depot replied at Docket 27. Oral argument was not requested and was not necessary to the Court's decision.

## BACKGROUND

On July 1, 2017, Home Depot employee Tim McKitrick noticed a man carrying a nail gun toward the store's main entrance.[1] Mr. McKitrick notified the store's front-end supervisor of a potential shoplifter and moved toward the store entrance. As the shoplifter approached the entrance, Mr. McKitrick asked twice to see a receipt; both times, the shoplifter ignored Mr. McKitrick's request.[2] The shoplifter then walked through the internal doors into the entrance vestibule, at which point a tag on the nail gun triggered the store's electric alarm system ("EAS").[3] Mr. McKitrick asked for a receipt a third time and walked behind the man into the vestibule.[4] The shoplifter then ran out the store's entrance. At the threshold of the exterior doors, the shoplifter collided with Ms. Fischer, who fell to the ground and broke her fingers.[5] Ms. Fischer asserts that she heard a male

---

[1] Docket 17-2 (McKitrick Aff.) at 2, ¶¶ 1–2.

[2] Docket 17-2 at 2, ¶¶ 5–6; *see* Docket 17-3 (Interior Surveillance Video) at 00:15–00:25.

[3] Docket 17-2 at 2, ¶ 6; *see* Docket 17-3 at 00:25–00:26.

[4] Docket 17-2 at 2, ¶ 7; *see* Docket 17-3 at 00:26–00:27.

[5] Docket 17-2 at 2, ¶¶ 9–10; Docket 21-3 (Fischer Dep.) at 1, ¶¶ 18–25; *see* Docket 17-4 (Vestibule Surveillance Video) at 00:05–00:10.

"yelling at [the shoplifter] to 'stop, bring it — that back'" prior to the collision; Mr. McKitrick does not recall telling the shoplifter to stop.[6]

After the collision, Mr. McKitrick "instinctively grabbed the shoplifter's hand."[7] Ms. Fischer asserts that the shoplifter then "slipped away" from Mr. McKitrick; Mr. McKitrick asserts that he "let the shoplifter go to render first aid to [Ms. Fischer]."[8] The shoplifter ran to a vehicle and fled the scene. He has not been identified or apprehended.[9]

At the time of the incident, Home Depot had policies that prohibited certain employees from chasing shoplifters, accusing customers of shoplifting, or detaining customers under certain circumstances.[10] These policies were intended to prevent injury to employees and customers.[11] Following the incident, Home Depot informed Mr. McKitrick that his "actions in requesting a receipt were appropriate but that [he] should not have grabbed the shoplifter after he knocked over [Ms. Fischer]."[12]

---

[6] Docket 21-3 at 1, ¶¶ 21–23; Docket 17-2 at 3, ¶ 16.

[7] Docket 17-2 at 3, ¶ 11; *see also* Docket 21-1 (McKitrick Dep.) at 17, ¶¶ 15–19 (noting Mr. McKitrick told a police officer he "was following [the shoplifter] out of the store").

[8] Docket 21 at 4; Docket 17-2 at 3, ¶ 12.

[9] Docket 17-2 at 3, ¶¶ 13–14; Docket 21 at 7.

[10] Docket 1-1 (Complaint) at 2, ¶¶ 6–10; Docket 6 (Answer) at 2–4, ¶¶ 6–10.

[11] Docket 1-1 at 2, ¶ 12; Docket 6 at 4, ¶ 12.

[12] Docket 17-2 at 3, ¶ 15.

After receiving medical treatment for her injuries, Ms. Ficher's medical providers billed her for $21,467.50 in medical expenses.[13]  However, the amounts paid by Medicare and by Ms. Fischer's insurance to Ms. Fischer's medical providers was lower than the amount charged.[14]  The providers accepted the amounts paid as full and final payment for the services rendered.

On August 22, 2018, Ms. Fischer filed a Complaint in the Superior Court for the State of Alaska, Third Judicial District at Anchorage.[15] On October 1, 2018, Home Depot removed the case to this Court pursuant to 28 U.S.C. § 1332(a)(1).[16] Ms. Fischer asserts in the Complaint that "one of [Home Depot's] employees negligently and/or gross negligently and/or recklessly accused and/or pursued a shoplifter which was a substantial factor in causing the shoplifter to flee and collide with [Ms. Fischer] who was a customer entering the Home Depot[,] . . . which was a substantial factor in causing serious injury to [Ms. Fischer] for which [Home Depot] is liable."[17] Ms. Fischer also asserts that Home Depot "is liable for negligent hiring and/or training and/or supervision which was a substantial factor in causing

---

[13] Docket 22-2 (Initial Disclosures) at 1.

[14] *See* Docket 32 (Supp. to Alternative Motion) at 2 (tabulating Medicare adjustments).

[15] Docket 1-1 at 1.

[16] Docket 1 (Notice of Removal).

[17] Docket 1-1 at 2, ¶ 5; *see also* Docket 1-1 at 1, ¶ 3 (asserting that Home Depot is liable for the actions of its employees "under theories of vicarious liability and/or agency and/or respondeat superior").

harm to the plaintiff."[18]  She seeks damages exceeding $75,000 "for past and/or future . . . medical expenses, pain and suffering, disability, loss of capacity for enjoyment of life, inconvenience, physical impairment, disfigurement and other non-pecuniary damages[.]"[19]

On March 13, 2019, Home Depot filed its Motion for Summary Judgment. On April 8, 2019, Home Depot filed its Alternative Motion for Ruling of Law.

## JURISDICTION AND APPLICABLE LAW

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[20]  Under diversity jurisdiction, the Court applies federal procedural law and Alaska substantive law.[21]

## DISCUSSION

Home Depot advances three primary arguments in the two motions.  First, it contends that summary judgment should be granted in favor of Home Depot. Second, it contends that if the Court does not grant summary judgment, a jury should be allowed to apportion fault for Ms. Fischer's injury to the unidentified shoplifter.  Third, it contends that Ms. Fischer may not recover economic damages

---

[18] Docket 1-1 at 3, ¶ 21.

[19] Docket 1-1 at 4, ¶ 23.  The Complaint elsewhere alleges that Ms. Fischer seeks damages exceeding $100,000.  Docket 1-1 at 4, ¶¶ 23, 25.

[20] Docket 1 at 3–4.

[21] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

for the difference between her medical providers' "rack rates" and the rates accepted by Ms. Fischer's providers as full payment for the medical services rendered.

## A. Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[22] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non moving party."[23] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[24]

In order to prove a negligence claim under Alaska law, a plaintiff "must show that: (1) the defendants owed [her] a duty of care, (2) the defendants breached this duty, (3) [she] was injured, and (4) [her] injury was the factual and proximate result

---

[22] *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[23] *Anderson*, 477 U.S. at 248.

[24] *Id.* at 249–50.

of the defendants' breach."[25]  Home Depot does not dispute that Ms. Fischer

suffered an injury.  The Court will thus consider whether Home Depot had a duty

of care to Ms. Fischer, and whether, when the evidence is reviewed in the light

most favorable to Ms. Fischer, a reasonable jury could conclude that the remaining

two elements of Ms. Fischer's negligence claim (breach and causation) are

satisfied.[26]

### 1. Duty

"[B]efore a defendant can be held liable for negligence, it must be

established that the defendant owed a duty of care to the plaintiff."[27]  "The scope

and existence of a duty of care are questions of law[.]"[28]  "When determining the

existence of a duty of care, summary judgment is appropriate where 'the only

reasonable inference from the undisputed facts is that one party owed another no

---

[25] *Regner v. N. Star Volunteer Fire Dep't, Inc.*, 323 P.3d 16, 21 (Alaska 2014).

[26] The Alaska Supreme Court has held that:

> As a general rule, issues of negligence are not appropriate for summary
> judgment.  The rationale for this rule is the elusive nature of the concept of
> negligence, the determination of the existence of which requires the
> forming of a judgment as to the reasonableness of the conduct of the
> parties in the light of all the circumstances of the case.

*Neary v. McDonald*, 956 P.2d 1205, 1212 (Alaska 1998) (quoting *Webb v. City of
Sitka*, 561 P.2d 731, 735 (Alaska 1977) (citing *Maddox v. River & Sea Marine,
Inc.*, 925 P.2d 1033, 1035, 1040 (Alaska 1996)).

[27] *Estate of Mickelsen ex rel. Mickelsen v. N.-Wend Foods, Inc.*, 274 P.3d 1193, 1198
(Alaska 2012).

[28] *Schack v. Schack*, 414 P.3d 639, 641 (Alaska 2018).

duty whatsoever—or owed a duty clearly and vastly narrower in scope than the one that the other party asserts.'"[29]  The Alaska Supreme Court uses a three-step process to determine whether a duty of care exists:

> First, we look for a duty imposed by statute. If none exists, we then determine if the current case falls in the class of cases controlled by existing precedent.  If no closely related case law exists, we weigh the public policy considerations enumerated in *D.S.W. v. Fairbanks North Star Borough School District.*[30]

Here, Ms. Fischer does not allege a statutory duty, so the Court turns first to the case law.  The Alaska Supreme Court does not appear to have articulated a duty of care clearly applicable to the conduct at issue here.  In *Webb v. City & Borough of Sitka*, the Alaska Supreme Court held that:

> A landowner or owner of other property must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk.[31]

However, subsequent cases indicate that the definition of "conditions" that landowners may be required to protect against applies only to the physical conditions of a property.[32]  Accordingly, this case is not controlled by *Webb*.  And

---

[29] *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013) (quoting *Arctic Tug & Barge, Inc. v. Raleigh, Schwarz & Powell*, 956 P.2d 1199, 1203 (Alaska 1998)).

[30] *Mickelsen*, 274 P.3d at 1199.

[31] 561 P.2d 731, 733–34 (Alaska 1977).

[32] *See, e.g.*, *Mickelsen*, 274 P.3d at 1202 ("Wendy's had a duty under *Webb* to maintain its property in a reasonably safe manner in view of all relevant circumstances"); *Schumacher v. City & Borough of Yakutat*, 946 P.2d 1255, 1258 (Alaska 1997) ("'Dangerous condition' refers to the physical condition of the property itself, not to

yet, *Webb* is the closest analogue to this case that the Court has identified among Alaska Supreme Court precedent.

While Alaska Supreme Court precedent does not appear to establish the existence of a duty of care in this case, it also does not foreclose the possibility that Home Depot owed a duty of care to Ms. Fischer.  In *Schumacher v. City & Borough of Yakutat*, the Alaska Supreme Court held that the city "did not have a duty to protect [a child] from obvious risks created by his own conduct[.]"[33]  The Supreme Court also noted that "other courts have expressly excluded third party activity" from the definition of the "'conditions' that landowners may be required to protect against[.]"[34]  Here, however, Ms. Fischer does not allege that Home Depot should be held liable for failing to protect Ms. Fischer from her own dangerous actions or the dangerous actions of a third party.  Rather, the Court reads Ms. Fischer's complaint to allege that a Home Depot employee engaged in dangerous conduct—aggressively pursuing the shoplifter—that was a substantial factor in causing her injury.  Similarly, in *R.E. v. State* and subsequent cases, the Alaska Supreme Court has "applied Restatement (Second) of Torts sections 314 through 320 to determine whether the defendant had a duty to protect the plaintiff from a

---

activities on the property . . . ." (quoting 57 Am. Jur. 2d, *Municipal, County, School and State Tort Liability* § 284 (1988))).

[33] 946 P.2d 1255, 1257 (Alaska 1997).

[34] *Id.* at 1258.

third party's dangerous conduct."[35] In *Estate of Mickelsen ex rel. Mickelsen v. N.-Wend Foods, Inc.*, however, the court noted that "[i]n each of the *R.E.* cases, the defendant was a government entity and the dangerous third party conduct at issue was intentional criminal behavior."[36] The court declined to apply this precedent in *Mickelsen*, where neither of these conditions was present.[37] Finally, in *Hurn v. Greenway*, the Alaska Supreme Court declined to impose a duty to "refrain from teasing or bullying someone known to be potentially violent."[38] The court declined to do so in part because it "refuse[d] to give victims the duty to prevent their own abuse and then hold them liable when they fail."[39] The *Hurn* court's reasoning is inapposite here.

Because neither a statute nor case law establishes whether a duty of care exists in this instance, the Court next "weigh[s] the public policy considerations enumerated in *D.S.W. v. Fairbanks North Star Borough School District*" to determine whether the Alaska Supreme Court would impose such a duty.[40] Of the

---

[35] *Mickelsen*, 274 P.3d at 1200 (citing *R.E. v. State*, 878 P.2d 1341 (Alaska 1994); *State v. Sandsness*, 72 P.3d 299 (Alaska 2003); *Dore v. City of Fairbanks*, 31 P.3d 788 (Alaska 2001)).

[36] *Id.* at 1201.

[37] *Id.*

[38] 293 P.3d 480, 488 (Alaska 2013).

[39] *Id.*

[40] *Mickelsen*, 274 P.3d at 1199; *see also Rupp v. Wal-Mart Stores, Inc.*, No. 3:11-CV-00052-JWS, 2012 WL 1951829, at *1 (D. Alaska May 30, 2012) ("Where there is no controlling precedent on a question of state law, a district court 'must predict how the highest state court would decide the issue using intermediate appellate court decisions,

considerations enumerated in *D.S.W.*, "foreseeability of harm is the most important, followed closely by the burden on the defendant and the consequences to the community: there can be no duty where the harm is unforeseeable, but foreseeability alone is insufficient to establish a duty if the burden of taking care or the effect on society is too harsh."[41]

As a threshold matter, the Court must settle upon an articulation of the duty Home Depot allegedly breached. Ms. Fischer does not precisely define the duty in question. Home Depot contends that it can be held liable for Ms. Fischer's injury only if the Court finds a duty "to refrain from asking for receipts three times, [] to refrain from walking behind a suspected shoplifter to ask for a receipt, and [] to refrain from asking a suspected shoplifter to bring back $400 of merchandise that has just triggered an alarm."[42] Essentially, Home Depot contends that it can be held liable for Ms. Fischer's injury only if the Court imposes a duty to avoid the precise conduct alleged in this case. This approach would be at odds with the

---

decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'" (quoting *Ariz. Elec., Power Coop. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995))).

The *D.S.W.* public policy considerations are "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost[,] and prevalence of insurance for the risk involved." *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981).

[41] *Hurn v. Greenway*, 293 P.3d 480, 486–87 (Alaska 2013).

[42] Docket 25 at 4.

Alaska Supreme Court's application of the *D.S.W.* "foreseeability" factor: "foreseeability is a broad concept and does not require that the precise harm in a given case be predictable."[43] The Court will accordingly frame its inquiry in broader terms by determining whether a store owner is under "a duty to take reasonable care for the safety of its patrons."[44]

Here, the *D.S.W.* factors support a holding that Home Depot owed such a duty to Ms. Fischer. First, the events leading to Ms. Fischer's injury fell within the broad concept of foreseeability. The Alaska Supreme Court has held that consequences are not foreseeable when "after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."[45] Here, it is foreseeable that a shoplifter would attempt to flee when pursued or when pursuit appears imminent, and that the shoplifter's attempt to avoid apprehension could result in injury to bystanders. Reviewing the evidence in the light most favorable to Ms.

---

[43] *P.G. v. State, Dep't of Health & Human Servs., Div. of Family & Youth Servs.*, 4 P.3d 326, 331 n.11 (Alaska 2000).

[44] Docket 17 at 6 (quoting *Phillips v. Equitable Life Assur. Co. of the U.S.*, 413 So. 2d 696, 698 (La. Ct. App. 1982)); *see also Roberts v. Tiny Tim Thrifty Check*, 367 So. 2d 64, 65 (La. Ct. App. 1979) (applying duty where store owner's conduct, rather than condition of property, was at issue).

[45] *P.G.*, 4 P.3d at 334 (emphasis omitted) (quoting Restatement (Second) of Torts § 435(2) (1965)).

Fischer, it does not seem "highly extraordinary" that Mr. McKitrick's actions "should have brought about the harm" allegedly committed.[46]

Additionally, the burden of the duty on Home Depot and the consequences to the community weigh in favor of the duty's imposition. In *Mickelsen*, a plaintiff alleged that a restaurant created an entry and exit system that enticed patrons to perform a dangerous traffic maneuver, that the restaurant knew the maneuver was regularly performed, and that this condition led to a fatal accident.[47] The Alaska Supreme Court noted that:

> Holding that a business has a duty to conduct one of its core operations in a safe manner does not involve the transformation of the law of negligence that would have resulted had we held, in *Schumacher*, that the city had a duty to protect all who entered its land from harming themselves through self-destructive behavior.[48]

The *Mickelsen* court ultimately described the defendant's duty more narrowly.[49] Nevertheless, the court's reasoning suggests that imposing a duty on Home Depot to Ms. Fischer would be appropriate here. This result would not

---

[46] *Id.* As discussed in the following subsection, however, the precise nature of Mr. McKitrick's actions—and whether those actions breached a standard of care—are questions of fact.

[47] *Mickelsen ex rel. Mickelsen v. N.-Wend Foods, Inc.*, 274 P.3d 1193, 1198 (Alaska 2012).

[48] *Id.* at 1200 (citing *Schumacher v. City & Borough of Yakutat*, 946 P.2d 1255, 1257 (Alaska 1997); *see also id.* at 1199–1200 ("In *Schumacher*, a child was injured when he collided with a car while sledding down a city-owned road. The city was aware that children frequently sledded on the road and had taken no steps to reduce the danger." (citing *Schumacher*, 946 P.2d at 1256).

[49] *Id.* at 1202 ("Wendy's had a duty under *Webb* to maintain its property in a reasonably safe manner in view of all relevant circumstances.").

preclude property owners or their agents from pursuing shoplifters; rather, it would incentivize them to conduct such pursuits safely. Furthermore, Home Depot's policies related to shoplifting suggest that Home Depot already recognized the risks that such pursuit poses to bystanders and attempted to minimize those risks.[50] Accordingly, the two most significant *D.S.W.* factors weigh in favor of imposing a duty in this instance.[51]

For the foregoing reasons, the Court concludes that Home Depot owed Ms. Fischer a duty to take reasonable care for her safety at its premises.[52]

### 2. Breach

The Court must determine whether a reasonable jury could conclude that Home Depot's agent breached Home Depot's duty of care owed to Ms. Fischer. "Whether a standard of care was breached is a factual determination."[53]

Here, the parties dispute at least one aspect of the incident that led to Ms. Fischer's injury. Ms. Fischer contends that prior to the collision between the

---

[50] Docket 1-1 (Complaint) at 2, ¶¶ 6–10, 12; Docket 6 (Answer) at 2–4, ¶¶ 6–10, 12.

[51] Additional *D.S.W.* factors also weigh in favor of a conclusion that the Alaska Supreme Court would impose a duty here. *See D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981). Ms. Fischer clearly suffered an injury. Furthermore, as discussed further below, the alleged connection between Mr. McKitrick's conduct and Ms. Fischer's injury is relatively close. Imposing a duty would also serve the policy of preventing future harm. Only two of the *D.S.W.* factors—the moral blame attached to the defendant's conduct, and the availability, cost, and prevalence of insurance for the risk involved—do not weigh clearly in favor of imposing the duty articulated above.

[52] *See Phillips v. Equitable Life Assur. Co.*, 413 So.2d 696, 698 (La. Ct. App. 1982).

[53] *Stewart v. Elliott*, 239 P.3d 1236, 1239 (Alaska 2010).

shoplifter and Ms. Fischer, she heard a male "yelling at [the shoplifter] to 'stop, bring it—that back.'"  Mr. McKitrick does not recall telling the shoplifter to stop.[54] Also relevant is Home Depot's policies regarding shoplifting, which prohibit employees from "chasing" shoplifters.[55]  Viewing these facts in the light most favorable to Ms. Fischer for purposes of this motion, the Court finds that a reasonable jury could conclude that Mr. McKitrick's actions caused the shoplifter to bolt and collide into Ms. Fischer, and that this constituted a breach of Home Depot's duty of care to Ms. Fischer.

### 3. Causation

Viewing the facts in the light most favorable to Ms. Fischer, the Court must next determine whether a reasonable jury could conclude that a breach of Home Depot's duty of care owed to Ms. Fischer was a proximate cause of Ms. Fischer's injuries.  "Determinations of proximate cause usually involve questions of fact within the province of the jury; proximate cause becomes a matter of law only where reasonable minds cannot differ."[56]

---

[54] Docket 21-3 at 1, ¶¶ 21–23; Docket 17-2 at 3, ¶ 16.

[55] Docket 1-1 (Complaint) at 2, ¶¶ 6–10; Docket 6 (Answer) at 2–4, ¶¶ 6–10.  These policies do not "provide a basis for a source of a legal duty."  *Angnabooguk v. State*, 26 P.3d 447, 452 n.18 (Alaska 2001) (citations omitted).  They may, however, be "admissible as evidence of a standard of care[.]"  *Estate of Day v. Willis*, 897 P.2d 78, 81 n.7 (Alaska 1995).

[56] *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007).

Home Depot contends that this element cannot be satisfied because it is impossible to determine whether the shoplifter bolted because of the alarm system or Mr. McKitrick's conduct.[57] However, this uncertainty would not preclude a jury from making a reasonable inference as to causation based on the evidence before it.[58] Home Depot also cites cases in which summary judgment was found to be appropriate because no reasonable jury could have found the causation factor satisfied.[59] But each of those cases involved very attenuated chains of causation, and are distinguishable on this basis.[60] Finally, Home Depot cites two cases— *Butler v. K-Mart Corp.*[61] and *K-Mart Corp. v. Lentini*[62]—in which courts found the

---

[57] Docket 17 at 9–11; *see City of Fairbanks v. Schaible*, 375 P.2d 201, 204 (Alaska 1962), *overruled in part on other grounds by Scheele v. City of Anchorage*, 385 P.2d 582 (Alaska 1963) ("A mere possibility of causation is not enough. When the matter remains one of conjecture, as it does here, the trial court must find against the party carrying the burden of proof.").

[58] *Cf. McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex. 1980) ("A reasonable inference drawn from this evidence is that the shoplifters began to run as a result of the unsuccessful arrest attempt, and ran like they did because they were being closely pursued by Joske's security guards. While other inferences can be drawn, we must accept that inference most favorable to the jury finding, and reject those inferences to the contrary.").

[59] Docket 17 at 6–9.

[60] *See Alvey v. Pioneer Oilfield Servs., Inc.*, 648 P.2d 599, 600–01 (Alaska 1982) (plaintiff injured while removing cover which rested atop a survey hole; contends that design or construction of cover caused accident); *Sharp v. Fairbanks N. Star Borough*, 569 P.2d 178, 180–81 (Alaska 1977) (plaintiff injured in fire after parent takes boys away from school wrestling tournament and instructs them to refuel automobile; contends that school district's conduct was substantial cause of plaintiff's injury).

[61] 432 So.2d 968 (La. Ct. App. 1983).

[62] 650 So.2d 1031 (Fla. Dist. Ct. App. 1995) (per curiam).

causation element was not satisfied because a shoplifter's conduct was not foreseeable.[63] But these cases are factually distinguishable. In *Butler*, the store's security officer "stated unequivocally that the shoplifting suspect had fled without being chased by anyone in the store," and "[n]o other evidence was introduced below to indicate that any store employee chased the suspect" prior to the plaintiff's injury.[64] In *Lentini*, a "calm and cooperative" shoplifter who had been detained by store security "suddenly left his chair and ran out of the conference room and through the store, colliding with the plaintiff."[65] There is no indication that the shoplifter was pursued by any store employee.

In summary, the Court finds that the Alaska Supreme Court would likely conclude that Home Depot owed a duty of reasonable care to Ms. Fischer as a matter of law. The Court further concludes that when all reasonable inferences are drawn for Ms. Fischer, a reasonable jury could determine that Home Depot's duty of care was breached and that the breach proximately caused Ms. Fischer's injuries. Accordingly, Home Depot's motion for summary judgment will be denied.

---

[63] Docket 17 at 11–12.

[64] 432 So.2d at 969.

[65] 650 So.2d at 1032.

## B. Apportionment of Fault to Unidentified Shoplifter

Home Depot next contends that if the Court denies its motion for summary judgment, "fault must be apportioned to the unknown tortfeasor."[66]  Ms. Fischer does not oppose this portion of Home Depot's motion.[67]  Pursuant to AS 09.17.080, "[a] jury is permitted to consider, based on the facts of the case, whether an apportionment of fault should be attributed to an unknown tortfeasor."[68]  Therefore, should this case proceed to trial, a jury will be allowed to apportion fault to the unidentified shoplifter.

## C. Recovery of Difference Between Rack Rates and Rates Accepted by Plaintiff's Providers

Ms. Fischer received medical treatment for injuries resulting from her collision with the shoplifter.[69]  She was billed $21,467.50 for that care.[70]  The amounts ultimately paid by Medicare and by Ms. Fischer's insurance for this treatment were considerably lower than the amounts charged by Ms. Fischer's providers.[71]  Nevertheless, the providers accepted these payments as full and final

---

[66] Docket 17 at 12 (capitalization omitted).

[67] *See* Docket 21 at 7.

[68] Docket 17-9 (*Paulino v. Wal-Mart Stores, Inc.*, Case No. 3:14-cv-00128-TMB) at 2 (citing AS 09.17.080).

[69] Docket 26-1 (Billing Records); Docket 26 at 2.

[70] Docket 22-2 at 1.

[71] *See* Docket 32 at 2 (tabulating Medicare adjustments).  The Court need not determine the precise amount of the differential to address the issue raised in Home Depot's motion.

payment for the services rendered. Home Depot contends that because Ms. Fischer's providers agreed to accept the lower amount, "the . . . differential [between the amount originally charged and the amount accepted as payment] is in no way an actual loss incurred by [Ms. Fischer], and is in no way necessary to make [Ms. Fischer] whole."[72] Ms. Fischer responds that plaintiffs are "normally entitled to recover the reasonable value of medical services necessary because of the defendant's negligent conduct."[73] She further contends that "the discrepancies [between the amounts originally charged and the amounts accepted as payment] . . . should be treated as unsubrogated collateral source payments" and can be offset by the Court following trial pursuant to the procedure set out in AS 09.17.070.[74]

---

[72] Docket 22 at 3.

[73] Docket 26 at 4.

[74] Docket 26 at 3.

A "collateral source" is compensation for a plaintiff's damages received from a source other than the tortfeasor. The common-law collateral source rule "prohibits the reduction of a plaintiff's damages when he has received compensation from another source." *Rupp v. Wal-Mart Stores, Inc.*, No. 3:11-CV-00052-JWS, 2012 WL 1951829, at *1 (D. Alaska May 30, 2012) (quoting *Tolan v. ERA Helicopters, Inc.*, 699 P.2d 1265, 1267 (Alaska 1985)). This rule "allows the victim a double recovery if the alternative would be to allow the tortfeasor to escape liability." *Chenage Corp. v. Exxon Corp.*, 991 P.2d 769, 790–91 (Alaska 1999). However, AS 09.17.070 modifies the common-law rule by allowing courts to reduce an injured party's jury award to reflect unsubrogated collateral source payments in some circumstances. The statute therefore limits the circumstances in which a victim can receive a double recovery.

In relevant part, AS 09.17.070 provides as follows:

> (a) After the fact finder has rendered an award to a claimant, and after the
> court has awarded costs and attorney fees, a defendant may introduce

When the parties submitted their briefing, it was an open question under Alaska law whether a plaintiff could recover the difference between the medical expenses charged by the plaintiff's providers and the rates accepted by those providers as full payment.  However, the Alaska Supreme Court recently issued an opinion that answers this question.   In *Weston v. AKHappytime, LLC*, a pedestrian who was injured when she slipped and fell on ice in a hotel parking lot brought a negligence action against the hotel.[75]  The hotel "moved for a pretrial ruling excluding evidence of [the plaintiff's] medical bills other than the adjusted, preferred rates accepted by her providers as full and final payment for medical

---

evidence of amounts received or to be received by the claimant as compensation for the same injury from collateral sources that do not have a right of subrogation by law or contract.

(b) If the defendant elects to introduce evidence under (a) of this section, the claimant may introduce evidence of

(1) the amount that the actual attorney fees incurred by the claimant in obtaining the award exceed the amount of attorney fees awarded to the claimant by the court; and

(2) the amount that the claimant has paid or contributed to secure the right to an insurance benefit introduced by the defendant as evidence.

(c) If the total amount of collateral benefits introduced as evidence under (a) of this section exceeds the total amount that the claimant introduced as evidence under (b) of this section, the court shall deduct from the total award the amount by which the value of the nonsubrogated sum awarded under (a) of this section exceeds the amount of payments under (b) of this section.

Here, no entity has "a right of subrogation by law or contract" in the difference between the medical expenses charged by the plaintiff's providers and the rates accepted by those providers.

[75] __ P.3d __, S-16529, 2019 WL 3519685, at *1 (Alaska Aug. 2, 2019).

services rendered."[76]   The trial court granted the motion, and the plaintiff filed a petition for review.   The Alaska Supreme Court noted that the petition presented two issues:

> First, was it error to exclude evidence of her full, undiscounted medical bills after her medical care providers accepted less from Medicare as payment in full? Second, if [the plaintiff's] medical bills are admissible, should the difference between those bills and what Medicare paid be viewed as a benefit to [the plaintiff] from a collateral source—meaning that evidence of it should be kept from the jury and presented only after trial, when the court determines pursuant to AS 09.17.070 whether some or all of the collateral source benefits should reduce the damages award?[77]

The Alaska Supreme Court answered both questions in the affirmative.  The court first held that it would "adopt[] the 'reasonable value' approach, in which an injured party is allowed to introduce the full, undiscounted medical bills into evidence at trial."[78]  It then held that "to the extent the negotiated rate differential represents a collateral benefit for which the collateral source has no 'right of subrogation by law or contract,' it is subject to the post-verdict procedure set out in AS 09.17.070."[79]

In light of the Alaska Supreme Court's decision in *Weston*, at trial in this matter, Ms. Fischer will be permitted to present evidence of the full amount of

---

[76] *Id.* (quotations omitted).

[77] *Id.* at *2.

[78] *Id.* at *9.

[79] *Id.* at *10 (quoting AS 09.17.070); *see supra* note 74.

medical expenses charged by her providers. Then, following trial, Home Depot will be permitted to assert that any damages awarded to Ms. Fischer are subject to the post-verdict procedure set out in AS 09.17.040.

## CONCLUSION

In light of the foregoing, IT IS ORDERED as follows:

Home Depot's Motion for Summary Judgment and Alternative Motion for Ruling that the Jury Be Allowed to Apportion Fault to the Unidentified Shoplifter at Docket 17 is DENIED as to Home Depot's request for summary judgment, and GRANTED as to Home Depot's request for a ruling that a jury be allowed to apportion fault to the unidentified shoplifter.

Home Depot's Alternative Motion for Ruling of Law that Plaintiff May Not Recover the Difference Between the Providers' Rack Rates [and] the Rates Accepted by Plaintiff's Providers for Medical Services Rendered at Docket 22 is DENIED insofar as evidence of the full amount charged may be presented to the jury, and GRANTED insofar as Home Depot may seek post-trial reduction of any damages awarded by the jury pursuant to AS 09.17.040.

DATED this 30th day of August, 2019, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE